UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x
WAYNE HOLIDAY AND ESTHER HOLIDAY
        Plaintiffs,

      -against-

THE CITY OF NEW YORK, POLICE DETECTIVE
TIMOTHY ERWIG SHIELD #2533, POLICE
DETECTIVE ORLEN ZAMBRANO, SHIELD #24202,
POLICE DETECTIVE MICHAEL PARKS, SHIELD
#1790, POLICE DETECTIVE WANDA CHALAR,
SHIELD #1952, POLICE DETECTIVE ERICK HIRSCH,
SHIELD #3907, POLICE DETECTIVE TODD CRACCO,
SHIELD #2359, POLICE UNDERCOVER OFFICER
C0032, POLICE UNDERCOVER OFFICER C0092,
POLICE SERGEANT EDWARD FACKLER,
        Defendants,
------------------------------------------------------------------------ X

PLAINTIFFS FIRST
AMENDED COMPLAINT
AND JURY DEMAND

Docket No. 13-CV-735(SJ)(SMG)

Plaintiffs Wayne Holiday and Esther Holiday, by their attorneys, Stoll, Glickman & Bellina, LLP, for their complaint alleges as follows:

## PRELIMINARY STATEMENT

1. This is a civil rights action in which plaintiffs seek relief through 42 U.S.C. §1983 for the violation of their Fourth and Fourteenth Amendment rights.

2. The claim arises from a December 10, 2011 incident in which Officers of the New York City Police Department ("NYPD"), acting under color of state law, intentionally and willfully subjected plaintiffs to, among other things, assault, battery, false arrest, false imprisonment, trespass, and malicious prosecution.

3. Plaintiffs seek monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION

4. This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. §1983 and §1988 and the laws and Constitution of the State of New York.

5. The jurisdiction of this court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a) and the doctrine of pendent jurisdiction.

6. The amount in controversy exceeds $75,000.00 excluding interest and costs.

## VENUE

7. Venue is laid within the Eastern District of New York in that Defendant City of New York is located within, and a substantial part of the events giving rise to the claim occurred within the boundaries of the Eastern District.

## PARTIES

8. Plaintiff Wayne Holiday is a citizen of the United States and at all times here relevant resided in Brooklyn New York.

9. Plaintiff Esther Holiday is a citizen of the United States and at all times here relevant resided in Brooklyn New York.

10. The City of New York (or "the City") is a municipal corporation organized under the laws of the State of New York. At all times relevant hereto, Defendant City, acting through the New York Police Department (or "NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel. In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

11. Police Detective Timothy Erwig, Shield #2533, Police Detective Orlen Zambrano, Shield #24202, Police Detective Michael Parks, Shield #1790, Police Detective Wanda Chalar, Shield #1952, Police Detective Erick Hirsch, Shield #3907, Police Detective Todd Cracco, Shield #2359, Police Undercover Officer C0032, Police Undercover Officer C0092, and Police Sergeant Edward Fackler, were, at all times here relevant, police officers of the NYPD, and as such each was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, these officers were under the command of the Brooklyn North Narcotics Bureau. Each of these police officers was personally present for the illegal arrest of plaintiff and/or the illegal use of force against plaintiff. The defendant officers are sued in their individual capacity.

12. At all times here mentioned defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## NOTICE OF CLAIM

13. Within 90 days of the events giving rise to this claim, plaintiffs filed written Notices of Claim with the New York City Office of the Comptroller. Over 30 days have elapsed since the filing of that notice, and this matter has not been settled or otherwise disposed of.

## FACTUAL ALLEGATIONS

14. Plaintiffs Esther Holiday is Plaintiff Wayne Holiday's mother. Together they reside at 265 Jefferson Avenue in Brooklyn NY.

15. On December 10, 2011 at approximately 9:00 pm, Wayne Holiday was walking home.

16. As he approached his house, Mr. Holiday was approached by defendants.

17. Defendants grabbed Mr. Holiday by his throat, threw him to the ground, and proceeded

to assault him.

18. Mr. Holiday had committed no criminal activity, nor did defendants have probable cause or reasonable suspicion that plaintiff had committed any criminal activity.

19. Mr. Holiday did not attempt to resist arrest, nor to assault the defendants in any way.

20. Defendants struck plaintiff with their fists and kicked him repeatedly for several minutes.

21. When the defendants finally ceased the assault they began to taunt plaintiff. Defendants made jokes about how much blood plaintiff had lost.

22. Following the assault plaintiff's need for medical attention was apparent, however defendants did not take any steps to obtain medical attention for Mr. Holiday.

23. Defendants entered plaintiffs' home without a valid warrant, consent, or other legal basis to enter their home.

24. Mrs. Holiday immediately objected to the officer's presence in her home.

25. Mrs. Holiday was detained for the duration of the officer's search of her home.

26. After not finding any contraband, defendants left plaintiffs' home and brought Mr. Holiday to the police precinct.

27. At approximately 10:45 pm Mr. Holiday was finally taken by ambulance to the Emergency Room at Woodhull hospital.

28. Mr. Holiday was treated at Woodhull hospital for serious injuries including fractures to his 8th, 9th, 10th, 11th and 12th ribs, subconjunctival hemorrhages causing him to bleed from both eyes, swelling to both eyes, head trauma, and numerous cuts and bruises.

29. Mr. Holiday was held at Woodhull hospital for approximately four days. On December 14, 2011 Mr. Holiday was finally physically able to be sent to court for arraignment.

30. During the length of Mr. Holiday's hospital stay, officers of the NYPD allowed Mr. Holiday very limited visitation from his mother and from his legal counsel. Moreover, the officers denied Mr. Holiday's mother and his legal counsel the right to photograph or otherwise document Mr. Holiday's injuries while he was in the hospital.

31. Based on the false allegations made by defendants, Mr. Holiday was charged with petit larceny, possession of stolen property, assault in the third degree, resisting arrest, criminal possession of a weapon, and harassment in the second degree.

32. These charges were brought despite the fact that Mr. Holiday had committed no crime. Moreover the defendants lacked probable cause or reasonable suspicion to believe Mr. Holiday had committed any crime.

33. On December 14, 2011 Mr. Holiday was arraigned and assigned $500 bail.

34. On December 15, 2011 Mr. Holiday posted bail and was released after spending approximately six days in custody.

35. On December 19, 2012 all charges against Mr. Holiday were dismissed.

36. As a result of the excessive force used against him, Mr. Holiday suffered extensive pain and suffering for months after the incident. Moreover, plaintiff continues to suffer from significantly reduced visual acuity in both eyes.

37. At all times during the events described above, the defendant police officers were engaged in a joint venture and formed an agreement to violate plaintiffs' rights. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events. They failed to intervene in the obviously illegal actions of their fellow officers against plaintiffs.

38. During all of the events above described, defendants acted maliciously and with intent

to injure plaintiffs.

## DAMAGES

39. As a direct and proximate result of the acts of defendants, plaintiffs suffered the following injuries and damages:

   a. Violation of their rights pursuant to the Fourth and Fourteenth Amendments to the United States Constitution to be free from an unreasonable search and seizure of his person;

   b. Violation of his rights to Due Process of Law under the Fourteenth Amendments to the United Stated Constitution;

   c. Violation of his New York State Constitutional rights under Article 1, Section 12 to be free from an unreasonable search and seizure;

   d. Violation of his New York State Constitutional rights under Article 1, Section 6 to due process;

   e. Physical pain and suffering:

   f. Emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety;

   g. Loss of liberty;

## FIRST CAUSE OF ACTION
(42 U.S.C. § 1983)

40. The above paragraphs are here incorporated by reference.

41. Defendants have deprived plaintiffs of their civil, constitutional and statutory rights under color of law and have conspired to deprive them of such rights and are liable to plaintiffs under 42 USC § 1983.

42. Defendants' conduct deprived plaintiffs of their right to be free of unreasonable

searches and seizures, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution. Defendants' conduct also deprived plaintiffs of their right to due process of law, pursuant to the Fourteenth Amendment of the United States Constitution.

43. Defendants falsely arrested plaintiffs, used excessive force against Mr. Holiday, and failed to intervene in each other's obviously illegal actions.

44. Plaintiffs have been damaged as a result of defendants' wrongful acts.

## SECOND CAUSE OF ACTION
(MUNICIPAL AND SUPERVISORY LIABILITY)

45. The above paragraphs are here incorporated by reference.

46. The City is liable for the damages suffered by plaintiff as a result of the conduct of their employees, agents, and servants, in that, after learning of their employees' violation of plaintiff's constitutional rights, they failed to remedy the wrong; they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful condition or event. The City has been alerted to the regular use of excessive force and false arrests by its police officers, but has nevertheless exhibited deliberate indifference to such excessive force and false arrests; that deliberate indifference caused the violation of plaintiff's constitutional rights in this case.

47. Moreover the City is liable for the damages suffered by plaintiff as a result of the conduct of their employees, agents, and servants, in that, the City has failed to properly train and supervise its employees. Upon information and belief, the individually named defendants in this action have been the subject of many prior civilian complaints and prior lawsuits alleging civil rights violations. Though the City of New York has paid hundreds of thousands of dollars in settlements for civil rights actions against defendants, the City has failed to take necessary steps

to ensure that these particular officers are not in a position to further violate the civil liberties of civilians. This City has been on notice that these officers are unfit for their present positions, yet continues to employ them, and empower them to violate the civil liberties of people like the plaintiffs.

48. Moreover, when the City was informed of the specific wrongdoing in this incident, it failed to necessary steps to investigate the incident and to discipline the officers at fault. Following the assault committed against him, Mr. Holiday cooperated fully with investigations by the Internal Investigation Bureau of the NYPD and the Civilian Complaint Review Board. Though it was apparent that this incident represented a gross abuse of power by the defendant officers, the City failed to take necessary steps to investigate this matter and see that the individual officers were disciplined.

49. The aforesaid event was not an isolated incident. The City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a disturbing number of their police officers use excessive force, unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers. Nevertheless, the City has allowed policies and practices that allow the aforementioned to persist.

50. For example, the well documented failures of the Civilian Complaint Review Board ("the CCRB"), a City agency, to substantiate obviously meritorious citizen complaints have gone uncorrected. The CCRB regularly finds complainants lack credibility based on the fact that such complainants have also brought lawsuits to remedy the wrongs they have experienced, a practice

that often results in not substantiating the most serious charges brought to them. In addition, the CCRB virtually never initiates their own findings of false statements against officers who have made false statements to the CCRB in their own defense, nor do they initiate findings that officers have failed to report their fellow officers' misconduct; thus, officers have no real incentive to come forward, or to testify truthfully at the CCRB. The CCRB has no enforcement mechanisms once making a finding against an officer; it can only make recommendations to the NYPD, once finding misconduct by an officer.

51. The NYPD, once receiving a substantiated complaint by the CCRB, fails to adequately discipline officers for misconduct. The NYPD Department Advocate, which is endowed with the responsibility of following up on substantiated CCRB charges, is understaffed and under-utilized. Furthermore, in the extraordinarily rare event that the CCRB substantiates a complaint and the Department Advocate proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer.

52. Further, the City has no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct. Without this notification, improper search and seizure practices and incredible testimony go uncorrected. Additionally, according to a report of the New York City Bar Association issued in 2000, the City has isolated their law department from the discipline of police officers, so that civil suits against police officers for actions taken in their capacity as police officers have no impact on the officers' careers, regardless of the outcome of the civil actions. Alan Hevesi, as New York City Comptroller, in 1999 reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers.

53. The City is aware that all of the aforementioned has resulted in violations of citizens'

constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate plaintiff's civil rights, without fear of reprisal. Furthermore, although the City has been on notice, through plaintiff's complaints to the IAB from the first day of the incidents complained of, the City has failed to remedy the wrong.

54. Plaintiff has been damaged as a result of the deliberate indifference of the City to the constitutional rights of the City's inhabitants.

55. The City is liable for the damages suffered by plaintiff as a result of the conduct of their employees, agents, and servants, in that, after learning of their employees' violation of plaintiff's constitutional rights, they failed to remedy the wrong; they have created a policy or custom under which unconstitutional practices occurred and allowed such policies or customs to continue, and they have been grossly negligent in managing subordinates who caused the unlawful condition or event. The City has been alerted to the regular use of excessive force and false arrests by its police officers, but have nevertheless exhibited deliberate indifference to such excessive force and false arrests; that deliberate indifference caused the violation of plaintiff's constitutional rights in this case.

### THIRD CAUSE OF ACTION
(ASSAULT)

56. The above paragraphs are here incorporated by reference.

57. Defendants made plaintiff fear for his physical well-being and safety and placed him in apprehension of immediate harmful and/or offensive touching.

58. Defendants have deprived plaintiff of his civil, constitutional and statutory rights and have conspired to deprive him of such rights and are liable to plaintiff under common law, and New York State laws and Constitution.

59. Plaintiff was damaged by defendants' assault.

## FOURTH CAUSE OF ACTION
(BATTERY)

60. The above paragraphs are here incorporated by reference.

61. Defendants engaged in and subjected plaintiff to immediate harmful and/or offensive touching and battered him.

62. Defendants used excessive and unnecessary force with plaintiff.

63. Defendants have deprived plaintiff of his civil, constitutional and statutory rights and have conspired to deprive him of such rights and are liable to plaintiffs under common law, and the New York State Constitution.

64. Plaintiff was damaged by defendants' battery.

## FIFTH CAUSE OF ACTION
(FALSE ARREST AND ILLEGAL IMPRISONMENT)

65. The above paragraphs are here incorporated by reference.

66. Defendants subjected plaintiff to false arrest, false imprisonment, and deprivation of liberty without probable cause.

67. Defendants intended to confine plaintiff.

68. Plaintiff was conscious of the confinement and did not consent to it.

69. The confinement of plaintiff was not privileged.

70. As a result of the false arrest, imprisonment, and deprivation of liberty, plaintiff was damaged.

## SIXTH CAUSE OF ACTION
(MALICIOUS PROSECUTION)

71. The above paragraphs are here incorporated by reference.

72. Defendants, acting with malice, initiated a prosecution against plaintiffs and caused them to be prosecuted.

73. Defendants did not have probable cause to initiate this proceeding.

74. The criminal proceedings were terminated in plaintiffs' favor.

75. Defendants have deprived plaintiffs of their civil, constitutional and statutory rights and have conspired to deprive them of such rights and are liable to plaintiffs under 42 U.S.C. §1983, New York State common law, and the New York State Constitution.

76. As a result of the malicious prosecution implemented by defendants, plaintiffs were damaged.

**SEVENTH CAUSE OF ACTION**
(CONSTITUTIONAL TORT)

77. The above paragraphs are here incorporated by reference.

78. Defendants, acting under color of law, violated Plaintiff's rights pursuant to §§ 5, 6 and 12 of the New York State Constitution.

79. A damages remedy here is necessary to effectuate the purposes of §§ 5, 6 and 12 of the New York State Constitution, and appropriate to ensure full realization of plaintiff's rights under those sections.

**EIGHTH CAUSE OF ACTION**
(NEGLIGENT HIRING & RETENTION)

80. The above paragraphs are here incorporated by reference.

81. Upon information and belief, defendant City, through the NYPD, owed a duty of care to plaintiff to prevent the physical and mental abuse sustained by plaintiff.

82. Upon information and belief, defendant City, through the NYPD, owed a duty of care to plaintiff because under the same or similar circumstances a reasonable, prudent and careful

person should have anticipated an injury to plaintiff or those in a position similar to plaintiff's as a result of this conduct.

83. Upon information and belief, defendant officers were incompetent and unfit for their positions.

84. Upon information and belief, defendant City knew or should have known through exercise of reasonable diligence that the officer defendants were potentially dangerous and had previously falsely arrested civilians without probable cause.

85. Upon information and belief, defendant City's negligence in hiring and retaining the officer defendants proximately caused plaintiff's injuries.

86. Upon information and belief, because of the defendant City's negligent hiring and retention of defendant officers, plaintiff incurred damages described above.

### NINTH CAUSE OF ACTION
(RESPONDEAT SUPERIOR)

87. The above paragraphs are here incorporated by reference.

88. Defendants' intentional tortious acts were undertaken within the scope of their employment by defendant City of New York and in furtherance of the defendant City of New York's interest.

89. As a result of defendants' tortious conduct in the course of their employment and in furtherance of the business of defendant City of New York, Plaintiff was damaged.

### TENTH CAUSE OF ACTION
(TRESPASS)

90. The above paragraphs are here incorporated by reference.

91. Plaintiffs enjoy exclusive possessory interest in the property in which they live.

92. Defendants did intentionally enter the plaintiffs' home without permission or other

legal authority to do so.

93. Defendants did remain in plaintiffs' home despite being told to vacate by a rightful resident.

94. Defendants' actions did interference with a possessory interest of plaintiffs' in their property.

95. Plaintiffs were damaged by the trespass by defendants.

## ELEVENTH CAUSE OF ACTION
(CONSPIRACY)

96. The above paragraphs are here incorporated by reference.

97. Defendants agreed to violate the plaintiffs' rights in the manner described above. Further defendants made an agreement to attempt to cover up the assault committed by defendants.

98. Defendants took action in furtherance of this agreement by charging plaintiff with the various crimes described above, and fabricating a version of events which would justify the officer's use of force.

99. Moreover, defendant's conspired to prevent Mr. Holiday from documenting the extent of his injuries by refusing to allow his mother or his attorney to photograph or otherwise document his injuries while he was held in Woodhull hospital.

100. Plaintiff was injured as a result of defendants' conspiracy.

WHEREFORE, plaintiffs demand judgment against the defendants, jointly and severally, as follows:

A. In favor of plaintiffs in an amount to be determined by a jury for each of plaintiff's causes of action;

B. Awarding plaintiffs punitive damages in an amount to be determined by a jury;

C. Awarding plaintiffs reasonable attorneys' fees, costs and disbursements of this action; and

D. Granting such other and further relief as this Court deems just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury.

DATED: June 27, 2013
       Brooklyn, New York

Respectfully yours,

By: Nicholas Mindicino, Esq.
Bar#: NM0437
Stoll, Glickman & Bellina, LLP
Attorneys for Plaintiff
475 Atlantic Avenue
Brooklyn, NY 11217
P: (718) 852-3710
F: (718) 852-3586
NMindicino@stollglickman.com

TO:    New York City
         Corporation Counsel Office
         100 Church Street, 4th floor
         New York, NY 10007
         ATTN: ACC Patrick Beath

         Detective Orlan Zambrano Shield #24202
         c/o ACC Patrick Beath
         Corporation Counsel Office
         100 Church Street, 4th floor
         New York, NY 10007

         Detective Timothy Erwig, Shield #2533,
         c/o ACC Patrick Beath
         Corporation Counsel Office
         100 Church Street, 4th floor
         New York, NY 10007

         Detective Michael Parks, Shield #1790
         NYPD – Narcotics, Brooklyn North
         1 Police Plaza
         New York, NY 10007

         Detective Wanda Chalar, Shield #1952
         NYPD – Narcotics, Brooklyn North
         1 Police Plaza
         New York, NY 10007

         Detective Erick Hirsch, Shield #3907
         NYPD – Narcotics, Brooklyn North
         1 Police Plaza
         New York, NY 10007

         Detective Todd Cracco, Shield #2359
         NYPD – Narcotics, Brooklyn North

1 Police Plaza
New York, NY 10007

Police Undercover Officer C0032
NYPD – Narcotics, Brooklyn North
1 Police Plaza
New York, NY 10007

Police Undercover Officer C0092
NYPD – Narcotics, Brooklyn North
1 Police Plaza
New York, NY 10007

Sergeant Edward Fackler
NYPD – Narcotics, Brooklyn North
1 Police Plaza
New York, NY 10007